**Mary E. PHILLIPS, Plaintiff and Counterclaim Defendant,**

v.

**INTERNAL REVENUE SERVICE, an Agency of the United States of America and United States of America, Defendants and Counterclaimants,**

v.

**George A. WRAY, Counterclaim Defendant.**

**Civil No. 88–00687.**

United States District Court, D. Hawaii.

Oct. 15, 1992.

**108**

Mary E. Phillips, pro se.

Omer Poirier, Asst. U.S. Atty., U.S. Attorney's Office, Honolulu, Hawaii, for defendants I.R.S. and U.S.

George Wray, c/o Rainmaker Hotel, pro se.

W. Joseph Linkletter, Michael A. Pollard, Baker & McKenzie, Chicago, Ill., and Peter C. Wolff, Jr., Hart & Wolff, Honolulu, Hawaii, for George Wray.

## ORDER GRANTING COUNTERCLAIM DEFENDANT GEORGE A. WRAY'S MOTION FOR A NEW TRIAL

FONG, District Judge.

### INTRODUCTION

On October 5, 1992, the court heard arguments and an evidentiary hearing in connection with a motion for new trial filed by Defendant George A. Wray ("Wray"). Wray seeks to overturn the judgment of the trial which was held commencing on February 11, 1992. Wray did not attend the trial, and contends that he was not notified of the trial date. At the trial, the jury found that the person responsible for making tax payments was Wray, and not Mary Phillips.

### FINDINGS OF FACT

The court makes the following findings of fact from the evidence adduced at the evidentiary hearing:

1. The court clerk did not notify Wray of the trial date.
2. Wray did not receive any notice of the trial until February 6, 1992. On that date, he received pre-trial documents that indicated a trial date of February 4, 1992. Wray did not attempt to contact the court or the other parties upon receiving these documents.
3. Wray did not receive any notice that the trial had in fact been continued to February 11, 1992.
4. Wray was travelling in the period between December 27, 1991 and February 6, 1992 to attend to medical problems.
5. The United States unsuccessfully attempted to serve Wray with a subpoena for trial during January 1992.
6. The case had been dormant between early 1990 to the fall of 1991. In July 1991, Wray checked the docket sheet and noted this inactivity.

### DISCUSSION

The United States contends that Wray should not be given a new trial because due diligence would have alerted him to the actual trial date of February 11, 1992, giving him sufficient time to attend. Wray contends that the burden should have been on the United States or the court to notify him.

### I. APPLICATION OF RULE 59(a) OR RULE 60(b)

The government and Wray disagree on whether Wray's motion should be considered as a motion under Rule 59(a) or Rule 60(b) of the Federal Rules of Civil Procedure. Wray filed his motion under Rule 59(a) which allows a motion for new trial for "any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Rule 60(b) allows setting aside a judgment for a number of grounds, including mistake, neglect or any other reason justifying relief. The government urges the application of Rule 60(b) because the standards are more definitive and thus more difficult to prove.

The government cites *Federal Practice and Procedure* and *Moore's Federal Practice* to show that other cases of lack of notice have not been considered under Rule 59(a).

The government's focus is too narrow. The authors of *Moore's Federal Practice* cite many categories of errors that can allow a new trial under Rule 59(a). These include finding new evidence, and unfair surprise to a litigant when unexpected evi-

dence is admitted at trial. 6A James Wm. Moore et al., *Moore's Federal Practice* ¶ 59.08 (2d ed. 1992). If the error of surprising a litigant with new evidence is sufficient to grant a new trial, then the error of surprising a litigant with an unknown trial date should be equally sufficient. Thus, the court FINDS that the motion is proper under Rule 59.

## II. SCOPE OF THE DUTY OF NOTIFICATION AND WHOM IT IS IMPOSED UPON

### A. *The Court's Duty*

The government and Wray agree that the primary duty of notification is on the clerk of the court. Fed.R.Civ.P. 77(d). Rule 77(d) provides:

**(d) Notice of Orders or Judgments.** Immediately upon the entry of an order or judgment the clerk shall serve a notice of the entry by mail in the manner provided for in Rule 5 upon each party who is not in default for failure to appear, and shall make a note in the docket of the mailing. *Any party may in addition serve a notice of such entry in the manner provided in Rule 5 for the service of papers....*

*Id.* (emphasis added; the emphasized sentence was added by the 1991 amendments to the rule).

Thus, Wray argues that he should be given a new trial because the clerk failed to notify him of the trial date.

### B. *The Duties of the Parties When the Clerk Fails to Notify One Party*

Where the clerk has failed to notify him of the trial date, Wray contends that the government should have notified him of the same. The government counters that Wray should have discovered the trial date himself through due diligence. For the reasons discussed below, the court agrees with Wray.

Both Wray and the government look to cases involving failure to file a timely appeal under Rule 4 of the Federal Rules of Appellate Procedure. In these cases, the losing party did not receive notice of the entry of a judgment, and therefore did not file a timely appeal.

Before 1991, a party without notice of the entry of a court order had to prove "due diligence" before receiving an extension of time to file an appeal to that order. For example, in *R.E. Rodgers v. Watt,* 722 F.2d 456, 460 (9th Cir.1983), the court considered a four part test:

(1) absence of Rule 77(d) notice;

(2) lack of prejudice to respondent;

(3) prompt filing of a motion after actual notice; and

(4) due diligence, or reason for lack thereof, by counsel in attempting to be informed of the date of the decision.

*Rodgers* involved a failure to file a timely appeal after entry of a final judgment under Appellate Rule 4. The attorney in *Rodgers* checked the docket sheet frequently, but failed to notice that the judgment had been entered out of chronological order. The *Rodgers* court found that he had been duly diligent, and that his mistake was excusable under Rule 60(b).

Wray argues persuasively however, that the "due diligence" standard of *Rodgers* and the other cases cited by the government was changed under the 1991 amendments to Rule 77(d). The 1991 amendments provided for the first time that a party can serve notice upon an opposing party without relying on the clerk (see the emphasized sentence of Rule 77 above). The advisory committee note explained the amendment as follows:

The purpose of the revisions is to permit district courts to ease strict sanctions now imposed on appellants whose notices of appeal are filed late because of their failure to receive notice of entry of a judgment. *See, e.g., ... Spika v. Village of Lombard, Ill.,* 763 F.2d 282 (7th Cir.1985); *... Wilson v. Atwood v. Stark,* 725 F.2d 255 (5th Cir. en banc) *cert. dismissed,* 468 U.S. 1222, 105 S.Ct. 17, 82 L.Ed.2d 912 (1984); *... Hensley v. Chesapeake & Ohio R.R. Co.,* 651 F.2d 226 (4th Cir.1981)....

Failure to receive notice may have increased in frequency with the growth in the caseload in the clerk's offices. The

present strict rule imposes a duty on counsel to maintain contact with the court while a case is under submission. Such contact is more difficult to maintain if counsel is outside the district, as is increasingly common, and can be a burden to the court as well as counsel.

The effect of the revisions is to place a burden on prevailing parties who desire certainty that the time for appeal is running. Such parties can take the initiative to assure that their adversaries receive effective notice....

The revised rule lightens the responsibility but not the workload of the clerk's offices, for the duty of that office to give notice of entry of judgment must be maintained.

Fed.R.Civ.P. 77(d) advisory committee's note.

The amendment to Rule 77(d) was made in conjunction with changes in Appellate Rule 4. Appellate Rule 4 was amended to allow a district court judge to grant an extension of time to appeal when a party had not received notice, from either the court clerk or the opposing party, under Rule 77(d). Fed.R.App.P. 4(a)(6).

When a party has had no notice of the entry of an order, the district court should consider whether the party that had notice will be "prejudiced" by an extension of time to file an appeal. *Id.* The advisory committee discussed the intended "prejudice" standard under the 1991 amendment to Appellate Rule 4 as follows:

By "prejudice" the Committee means some other adverse consequence other than the cost of having to oppose the appeal and encounter the risk of reversal, consequences that are present in every appeal. Prejudice might arise, for example, if the appellee had taken some action in reliance on the expiration of the normal time period for filing a notice of appeal.

Fed.R.App.P. 4 advisory committee's note.

At least in the context of Appellate Rule 4, the government is wrong in its statement of the law. In arguing for a "due diligence" standard to be imposed on the party without notice, the government relies on the very cases cited by the advisory committee note to Rule 77 quoted above. The committee stated that the 1991 amendment was made to avoid the "strict sanctions" imposed in these cases. Fed.R.Civ.P. 77 advisory committee's note. The amendment thus did away with the "due diligence" standard of the old cases, and replaced it with a liberal policy allowing an extension of time to appeal when a party did not receive actual notice of the entry of an order from either the clerk or the opposing party. Such remedies are only limited by a "prejudice" standard—the prevailing party must have relied on the order and the lack of appeal. The risk of reversal on appeal is not prejudice sufficient to deny an extension.

Without any more specific standard to guide it, the court will apply the standards of Rule 77 and Appellate Rule 4 to the present case.[1] In the context of a motion for a new trial, the court states the rule of law as follows:

█ A party without any notice of the trial date may receive a new trial unless the opposing party would be prejudiced by the new trial. The prejudice to the opposing party must be more than that involved in retrying the case. The presumption must be heavily in favor of granting a new trial because attendance at trial is fundamental to the concepts of due process and fairness.

█ The standard does not focus on the culpability of the party without notice, be-

1. At the hearing, the government argued that Wray should have notified the court or filed a motion within seven days of his receipt of notice of the trial on February 6, 1992. The suggested limit comes from Appellate Rule 4 which requires a litigant to file notice of appeal within seven days of receiving late notice of an entry of judgment.

The court declines to apply a seven day limit to this case. Although seven days is a reasonable time limit in the specific case governed by Appellate Rule 4, seven days is a very short period when the law is unclear because no specific rule applies. Preferably, Wray should have contacted the court, but his decision to contact a lawyer first was not unreasonable enough to deny him a trial.

cause the amendments to Rule 77 clearly moved away from imposing a "due diligence" standard. However, it is appropriate to consider the actions of the party seeking a new trial when gross neglect or abandonment of the case is shown.

### C. *Application of the Standard to This Case*

■ The government concedes that Wray did not receive notice of the trial date. Thus, unless the government is prejudiced, a new trial should be granted.

The government argues that it is prejudiced in that it will be "whipsawed" by the risk of inconsistent jury verdicts. The risk of a whipsaw appears real—defendant Mary Phillips convinced the jury that she was not responsible for the taxes, but that Wray was. On a second trial, Wray could convince a jury that Mary Phillips was responsible, and that he was not, leaving the government without anyone in the bag.

The court FINDS that this is not sufficient prejudice to deny Wray a new trial. Under Appellate Rule 4, the mere threat of reversal is not sufficient prejudice to deny an extension to appeal. Analogously, the threat of an inconsistent verdict in this case should not be enough. Moreover, the absence of a defendant at a trial should have alerted the government to a notice problem. The government knew when it proceeded with the trial that inconsistent verdicts were possible in the event of a later, separate trial with Wray alone.

■ Moreover, under the circumstances, Wray did not neglect the case to the point where he should be denied a trial. Wray lived in American Samoa, and was acting pro se. He had filed an answer and attended a deposition for the case. He had missed one pretrial conference before the magistrate. Over all, given his attendance to his health problems in the months immediately preceding the trial, his permanent residence in American Samoa, and his actual lack of notice of the trial date, Wray's conduct appears excusable.

Therefore, the court GRANTS Wray's motion for a new trial.

IT IS SO ORDERED.